# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Milwaukee Mutual Insurance Co.,<br><br>　　　　　　　　　　Plaintiff,<br>v.<br><br>Deere & Company Inc., and<br>Robert Bosch Corporation,<br><br>　　　　　　　　　　Defendants. | **MEMORANDUM<br>AND ORDER**<br><br>Civil No. 04-4905 (MJD/JGL) |

Emily K. John and Thomas D. Jensen, Lind, Jensen, Sullivan & Peterson, PA, Counsel for Plaintiff.

Gregory A. Bromen, Richard J. Nygaard, John J. Wackman, and Gregory A. Bromen, Rider Bennett, LLP, Counsel for Defendants.

## I.　　INTRODUCTION

This case involves tort and breach-of-warranty claims stemming from the destruction of a John Deere excavator by fire. The owner tendered a claim to his insurer, Plaintiff Milwaukee Mutual Insurance Co. ("Milwaukee"), who paid the owner and filed this subrogation claim against Defendant Deere & Company ("Deere") and its subcontractor, Defendant Robert Bosch Corporation ("Bosch"). Defendants now move for judgment on the pleadings under Fed. R. Civ. P. 12(c). For reasons more fully explained below, Defendant's motion for judgment on the pleadings shall be granted.

## II.　　FACTUAL BACKGROUND

The facts in this case are largely undisputed. On March 19, 2003, in Grantsburg, Wisconsin, Charles Polencheck's 2000 John Deere Model 120

Excavator ("the Excavator") started on fire while attached to a Fabtak tree processor. Mr. Polencheck had purchased the Excavator and the tree processor on October 26, 2000. The operator at the time of the incident stated that he observed no noises, buzzers, or warning light; the only warning sign was smoke coming from the Excavator's engine compartment. Attempts to extinguish the fire were unsuccessful, and the Excavator was declared a total loss.

Mr. Polencheck tendered a claim to his insurer, Milwaukee, who paid him $164,000 after a substantial-loss-value investigation revealed that the fire originated in the Excavator's electrical system at or near the alternator, which had been re-manufactured by Defendant Bosch. More specifically, the investigation discerned that the fire was caused by the alternator's capacitor and regulator devices (also manufactured by Bosch) and possibly the alternator's associated wiring and circuitry.

Milwaukee has brought this suit pursuant to its subrogation rights, bringing claims of strict liability, negligence, and breach of warranty. Defendants now file a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c), asserting that: (1) under both Minnesota and Wisconsin law, Plaintiff's tort claims are barred by the economic loss doctrine because its only damages were to the Excavator itself; and (2) Plaintiff's warranty claims are barred by the express terms of the warranty.

## III.  DISCUSSION

### A.  Standard for Judgment on the Pleadings

After the close of pleadings, but within such time as not to delay the trial, any party may move for judgment on the pleadings. Fed. R. Civ. P. 12(c). Judgment on the pleadings is appropriate where no material issue of fact remains to be resolved, and where the movant is entitled to judgment as a matter of law. Faibisch v. Univ. of Minn., 304 F.3d 797, 803 (8th Cir. 2002). On such motions, all facts pled by a nonmoving party are accepted as true, and all reasonable inferences from pleadings are resolved in that party's favor. Id. When considering a motion for judgment on the pleadings, a court may consider materials necessarily embraced by the pleadings. Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999). Accordingly, the applicable Customer Purchase Order may be considered in Defendants' motion. See Stahl v. U.S. Dep't of Agric., 327 F.3d 697, 700 (8th Cir. 2003) (holding that if case involves contracts, those documents may be considered in deciding motion to dismiss).

### B.  Choice of Law

The first issue is whether the applicable law is that of Minnesota or Wisconsin. Plaintiff contends that the appropriate law is that of Wisconsin, where the accident took place, while Defendant contends that the laws of Minnesota and Wisconsin—as applied to this case—do not actually conflict. In diversity cases, a

court applies the choice-of-law rules of the forum state. <u>Glover v. Merck & Co. Inc.</u>, 345 F. Supp. 2d 994, 997 (D. Minn. 2004).

In Minnesota, before conducting a choice-of-law evaluation, a court must first determine whether a true conflict exists between the law of the two forums. <u>Nodak Mut. Ins. Co. v. Am. Family Mut. Ins. Co.</u>, 604 N.W.2d 91, 93-94 (Minn. 2000). A conflict exists if the choice of one forum's law over the other will determine the outcome of the case. <u>Id.</u> If the conflict is outcome-determinative, application of Minnesota's five choice-influencing factors is appropriate. <u>See</u> <u>id.</u> (providing choice-influencing factors: (1) predictability of results, (2) maintenance of interstate and international order, (3) simplification of the judicial task, (4) advancement of the forum's governmental interest, and (5) application of the better rule of law). But if choosing one state's law over the other is not outcome-determinative, no further conflict-of-law analysis is needed. <u>State Farm Mut. Auto. Ins. Co. v. Great West Cas. Co.</u>, 623 N.W.2d 894, 899 (Minn. Ct. App. 2001) (holding that because no conflict existed, completion of the choice-of-law analysis was unnecessary).

Plaintiff contends that the law of the two states actually conflict because they differ in their application of the "other property" and "public safety" exceptions to the economic loss doctrine. The laws of both states shall be analyzed to determine whether any differences are outcome-determinative.

4

### C. Tort Claims and the Economic Loss Doctrine

While Plaintiff claims that Defendants are liable under the tort claims of negligence and strict liability, Defendants argue that these claims are barred under the economic loss doctrine. This doctrine states that economic losses arising out of commercial transactions are generally unrecoverable in tort unless there is personal injury or damage to property other than the goods themselves. MINN. STAT. § 604.10; Ins. Co. of N. Am. v. Cease Elec., Inc., 688 N.W.2d 462, 471 (Wis. 2004) (noting that economic loss doctrine effectively extinguishes tort actions not involving personal injury or property damage).

#### 1. Application of Economic Loss Doctrine

While most states, like Wisconsin, include this doctrine as part of the common law, see, e.g., Cease Elec., 688 N.W.2d at 471, the Minnesota legislature has codified the economic loss doctrine through statute:

> (a) Economic loss that arises from a sale of goods that is due to damage to tangible property other than the goods sold may be recovered in tort as well as in contract, but economic loss that arises from a sale of goods between parties who are each merchants in goods of the kind is not recoverable in tort.
>
> (b) Economic loss that arises from a sale of goods, between merchants, that is not due to damage to tangible property other than the goods sold may not be recovered in tort.
>
> (c) The economic loss recoverable in tort under this section does not include economic loss due to damage to the goods themselves.

>(d) The economic loss recoverable in tort under this section does not include economic loss incurred by a manufacturer of goods arising from damage to the manufactured goods and caused by a component of the goods.
>
>(e) This section shall not be interpreted to bar tort causes of action based upon fraud or fraudulent or intentional misrepresentation or limit remedies for those actions.

MINN. STAT. § 604.10; see § 604.101 (defining doctrine's terms and scope, as well as limits to tort claims).

In both Minnesota and Wisconsin, this doctrine states that where the damage is to the product itself and includes no damage to other property, then the Uniform Commercial Code is the exclusive remedy—precluding tort claims. Compare Transp. Corp. of Am. v. IBM, 30 F.3d 953, 958 (8th Cir. 1994) (applying Minnesota law); Lloyd F. Smith Co., Inc. v. Den-Tal-Ez, Inc., 491 N.W.2d 11, 15 (Minn. 1992) ("When there is a claim by a buyer for damage to the defective product itself . . . , the U.C.C. remedy is exclusive and tort will not lie."); State Farm Mut. Auto. Ins. Co. v. Ford Motor Co., 572 N.W.2d 321 (Minn. Ct. App. 1997) (economic loss doctrine barred plaintiff's claim, consisting entirely of damage to insured vehicle) with Wausau Tile, Inc. v. County Concrete Corp., 593 N.W.2d 445, 451 (Wis. 1999) (recognizing that economic loss doctrine precludes recovery for direct or consequential economic loss, but it "does not preclude a product purchaser's claims of personal injury or damage to property other than the product itself"); Northridge Co. v. W.R. Grace & Co., 471 N.W.2d 179, 182

(Wis. 1991) (noting that the "remedy for economic loss alone, without a claim for personal injury or physical harm to property other than the defective product itself, generally lies in a breach of warranty claim, not in a claim in tort").

### (a) Other Property Exception

As stated above, the economic loss doctrine bars tort damages in product liability cases unless the defective product causes personal injuries or damage to property other than the product itself, but it does not control where the defective product damages other property. E.g., MINN. STAT. § 604.10; Wausau Tile, 593 N.W.2d at 451. Plaintiff argues that this "other property" exception applies here because damage to the tree processor constituted a distinct piece of property, separate from the Excavator.

Plaintiff focuses on Wisconsin law because it claims that Minnesota's caselaw has weakened the other property exception in commercial tort actions. See Hapka v. Paquin Farms, 458 N.W. 2d 683, 688 (Minn. 1990). But one year after the Hapka decision, the Minnesota legislature reinstated the exception by passing legislation now codified in MINN. STAT. §§ 604.10 & 604.101. See 1991 Minn. Sess. Law Serv. Ch. 352, § 2 (S.F. 565) (West). In 1993, the legislature added a provision limiting recovery for economic loss caused by components of manufactured goods. See MINN. STAT. § 604.10(d); 1993 Minn. Sess. Law Serv. Ch. 91, § 1 (H.F. 1153) (West). Accordingly, contrary to Plaintiff's contention,

7

Minnesota's implementation of the economic loss doctrine's other property exception continues to thrive.

The law of both Minnesota and Wisconsin weakens Plaintiff's argument that the Excavator and tree processor constitute separate products under the economic loss doctrine. Wisconsin's "integrated system rule" holds "that once a part becomes integrated into a completed product or system, the entire product or system cease[s] to be 'other property' for purposes of the economic loss doctrine." Linden v. Cascade Stone Co., 687 N.W.2d 823, 829 (Wis. Ct. App. 2004). And Minnesota's statute specifically limits damage "caused by a component of the goods," which comports with caselaw on that issue. MINN. STAT. § 604.10(d); Minneapolis Soc'y of Fine Arts v. Parker-Keline Assocs. Architects, Inc., 354 N.W.2d 816, 820 (Minn. 1984) (holding that bricks constituted whole of building, and "where a defect in a component part damaged the product into which that component was incorporated, economic losses to the product as a whole were not losses to 'other property'") (overruled on other grounds by Hapka, 458 N.W.2d at 688); see Trans. Corp. of Am., Inc. v. IBM, 30 F.3d 953, 957 (8th Cir. 1994) (applying Minnesota law, holding damage disk drive caused to rest of computer was not damage to "other property").

A prior decision by this court, applying Minnesota law, is nearly identical to the facts at issue here. Greg Cook Logging, Inc. v. Deere & Co., Inc., Case No. 98-2569 (ADM/RLE) (D. Minn. Sept. 7, 1999) (unpublished slip opinion). In Greg

Cook, like in the instant case, a John Deere machine used in logging caught fire for no apparent reason and was destroyed; no other property was damaged; the warranty had expired; and the plaintiff filed suit claiming strict liability, negligence, and breach of warranty. Id. The Greg Cook court held that the economic loss doctrine barred any tort claims because there was no damage to property other than the goods sold. The indistinguishable facts in this case warrant the same decision.

Here, the tree processor was attached to the Excavator and installed before the owner bought both items, which work as a single unit and were sold as a single unit, in one transaction, for one undivided price. This is analogous to other Wisconsin, Minnesota, and Eighth Circuit cases holding that parts may be functionally distinct but cease to be separate property when used as a single unit. E.g., Midwhey Powder Co. v. Clayton Indus., 460 N.W.2d 426, 429 (Wis. Ct. App. 1990) (holding that steam engine and turbine ceased to be separate property "when each is a component of a single system integrally connected to one another as part of an *overall apparatus* designed to produce electricity") (emphasis added); see Minneapolis Soc'y of Fine Arts, 354 N.W.2d at 820 (holding defective bricks' damage to component building did not constitute damage to "other property"); see also R.W. Murray Co. v. Shatterproof Glass Corp., 697 F.2d 818, 829 n.11 (8th Cir. 1983) (holding that under Missouri law, glass panels

9

incorporated into office building were not "other property" for purposes of economic loss doctrine, thereby precluding plaintiff's tort claim).

Because the Excavator and its attached tree processor were component parts of an integrated system, which worked and were sold together, they are not a "separate system" under either Wisconsin or Minnesota law. As such, the "other property" exemption does not apply.

### (b)     Wisconsin's "Public Safety" Exception

Plaintiff next argues that Wisconsin's "public safety" exception to the economic loss doctrine permits its tort claims to proceed. In one Wisconsin case, the economic loss doctrine did not bar claims against the manufacturer of a fireproofing material containing asbestos, where those plaintiffs sought economic damages for cleanup costs. <u>Northridge Co. v. W.R. Grace & Co.</u>, 471 N.W.2d 179, 180 (Wis. 1991). The <u>Northridge</u> court held that the "principles and policies underlying strict products liability actions, namely, public safety and risk sharing, justify recognizing the tort claims." <u>Id.</u> at 186. But this holding was later clarified by the Wisconsin Supreme Court, which noted that "<u>Northridge</u> does not create a broad 'public safety exception' to the economic loss doctrine," but that asbestos cases are "unique in the law" and justified "special treatment." <u>Wausau Tile v. County Concrete Corp.</u>, 593 N.W.2d 445, 457-58 (Wis. 1999). The <u>Wausau Tile</u> court approved of a narrow interpretation of <u>Northridge</u> "in cases not involving

10

asbestos or other inherently dangerous contaminants." Id. at 458-59 (citations omitted). Such a narrow interpretation is appropriately applied here.

The Excavator is clearly not a "public safety" hazard as inherently dangerous as asbestos; rather, it can—at most—become dangerous only under a confluence of circumstances. As such, Wisconsin's very narrow "public safety" exception does not apply here. Because any damage occurred only to the Excavator itself, triggering the economic loss doctrine, and because no exceptions to that doctrine apply here, Plaintiff's tort claims for negligence and strict liability are barred.

    **D.**    **Warranty Claims**

Plaintiff's complaint also includes claims that Defendants breached express and implied warranties for their products. As more fully explained below, these claims also fail because no express warranties were breached, and any implied warranties were properly disclaimed. Again, because the laws of both Minnesota and Wisconsin prohibit Plaintiff's breach-of-warranty claims from going forward, a conflict-of-law analysis is unnecessary. See State Farm, 623 N.W.2d at 899.

    **1.**    **Express Warranties**

The warranties Deere provided for the Excavator included a full machine warranty and an additional, so-termed "StructurALL" warranty. Such express warranties are considered terms that have been "dickered" out, and go directly to

the essence of the bargain. St. Croix Printing Equip., Inc. v. Rockwell Int'l Corp., 428 N.W.2d 877, 879 (Minn. Ct. App. 1988) (citing U.C.C. § 2-313 (1972)); see Phillips Petroleum Co. v. Bucyrus-Erie Co., 388 N.W.2d 584, 589 (Wis. 1986) (holding that express warranty involves striking a bargain "to forego the possibility of tort recovery in exchange for negotiated, alternate economic advantages"). A written agreement may only be challenged when the parties did not intend it as the final expression of their agreement, and absent such evidence, courts should not interfere with that agreement's terms. St. Croix, 428 N.W.2d at 880; see Dieter v. Chrysler Corp., 610 N.W.2d 832, 836 (Wis. 2000) ("Where the terms are unambiguous, we must construe the warranty as it is written.") (citations omitted).

### (a)     Full Machine Warranty

The Excavator had a 12-month/2000-hour (whichever came first) full machine warranty through which Deere promised to repair or replace any parts defective in material or workmanship within the applicable warranty period. The full machine warranty expired on or about October 30, 2001, while the incident at issue occurred on March 19, 2003—16 months later.

Defendant does not dispute that the full machine warranty expired before the fire at issue. Because the full machine warranty expired well before the Excavator was damaged, judgment is appropriate regarding Plaintiff's claimed breach of the full-machine warranty. See NMP Corp. v. Parametric Tech. Corp.,

12

958 F. Supp. 1536, 1549 (N.D. Okla. 1997) (holding that where no defects appeared prior to the expiration of software manufacturer's 90-day warranty, plaintiff's breach-of-warranty claim was time-barred); Taterka v. Ford Motor Co., 271 N.W.2d 653, 657 (Wis. 1978) (holding that Ford's warranty covered only those manufacturing defects discoverable within 12 months or 12,000 miles, and buyer bore risk of repairs beyond that point); E.S.P., Inc. v. Midway Nat'l Bank of St. Paul, 447 N.W.2d 882, 884-85 (Minn. 1989) (noting that if parties had sued even six days after expiration of warranty period, their claims would be time-barred).

### (b) StructurALL

The Excavator also included a three-year StructurALL warranty, which limited the components covered by that warranty.

> If a particular component is not listed below, it is not covered by John Deere StructurALL warranty:
>
> Arm, Articulation Joint, Bin Frame, Boom, C-Frame, Circle Frame, Draft Frame, Engine Frame, Equipment Frame, Grapple Frame, Loader Arm, Loader Frame, Mainframe, Moldboard Lift Arms, Turntable, specialty booms and arms marketed as "heavy-duty" by Deere.

Notably, this list does not include the claimed cause of the fire—the alternator and its related parts—nor does it include any other reasonable causes of fire, such as the engine or electrical system. If a warranty's language is unambiguous, it presents a question of law that a court may properly consider. Kellogg Square

P'ship v. Prudential Ins. Co. of Am., 63 F.3d 699, 701 (8th Cir. 1995) (applying Minnesota law); Craigs, Inc. v. Gen. Elec. Capital Corp., 12 F.3d 686, 688 (7th Cir. 1993) (applying Wisconsin law). Because the StructurALL warranty does not include any of the claimed causes of the fire at issue, Defendants did not—as a matter of law—breach the StructurALL warranty, and judgment is granted against Plaintiff's claim of any breach of express warranty.

### 2. Implied Warranties of Merchantability or Fitness

Plaintiff lastly claims that Defendants breached implied warranties of fitness and merchantability, downplaying Defendants' argument that the bold, fully capitalized disclaimer served to successfully disclaim those warranties.

Both Minnesota and Wisconsin statutes state that

> [T]o exclude or modify the implied warranty of merchantability or any part of it, the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous. Language to exclude all implied warranties of fitness is sufficient if its states, for example, that "there are no warranties which extend beyond the description on the face hereof."

MINN. STAT. § 336.2-316(2); WIS. STAT. § 402.316(2) (same). A term is "conspicuous" if "a reasonable person against whom it is to operate ought to have noticed it," and such a determination is properly made by a court. MINN. STAT. § 336.1-201(10); WIS. STAT. § 401.201(1) (same).

Here, Defendant's implied-warranty disclaimer stated as follows:

**I. NO IMPLIED WARRANTY OR OTHER REPRESENTATION**

Where permitted by law, neither John Deere nor any company affiliated with it makes any warranties, representations or promises, express or implied, as to the quality, performance, or freedom from defect of its products, other than those set forth on this page, and **NO IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS IS MADE**.

(Emphasis in original.)

This disclaimer is conspicuous and specifically excludes warranties of merchantability and fitness. Both Minnesota and Wisconsin courts have both upheld such a disclaimer. E.g., Dubbe v. A.O. Smith Harvestore Prods., Inc., 399 N.W.2d 644, 647 (Minn. Ct. App. 1987); Recreatives, Inc. v. Myers, 226 N.W.2d 474, 478-79 (Wis. 1975). Because it is clear that all the implied warranties were disclaimed as a matter of law, Plaintiff's claim for breach of the implied warranties of merchantability and fitness are barred.

**IV.     CONCLUSION**

Because under both Minnesota law and Wisconsin law, exceptions to the economic loss doctrine do not apply, Plaintiff's tort claims are barred. Further, no factual dispute exists regarding the expiration of the full-machine warranty and the disclaimer of the implied warranty claims. Lastly, the StructurALL warranty clearly limits its coverage only to parts that are not alleged to be a cause of the fire at issue. Because all potential warranties were expired, inapplicable, or

successfully disclaimed, judgment on Plaintiff's breach-of-warranty claims is granted as a matter of law.

Based upon the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendants' Motion for Judgment on the Pleadings [Docket No. 8] is **GRANTED**; and

2. Plaintiff's claims against Defendants are **DISMISSED** in their entirety.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


Dated: August 26, 2005                    s/ Michael J. Davis
                                          Judge Michael J. Davis
                                          United States District Court